# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **LEON W. BRADLEY,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 5:18-cv-01085-MHH |
| | } |
| **ANA FRANKLIN, et al.,** | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION AND ORDER

Defendant Ana Franklin formerly served as the sheriff of Morgan County, Alabama. Plaintiff Leon W. Bradley worked as the warden of the Morgan County jail. Mr. Bradley alleges that Sheriff Franklin and three other Morgan County Sheriff's Office employees—Robert Wilson, Blake Robinson, and Justin Powell—violated his constitutional rights. The defendants ask the Court to dismiss Mr. Bradley's fourteen claims against them. (Docs. 8, 9).[1] For the reasons stated below, the Court denies the defendants' motions.

---

[1] Mr. Bradley concedes that "Morgan County Sheriff's Office" is not a legal entity subject to suit. (Doc. 20, p. 2, n.1). The Court asks the Clerk to please terminate the Morgan County Sheriff's Office as a party in the action.

1

## I. STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Generally, to survive a Rule 12(b)(6) motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in the light most favorable to the non-moving party. *Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018). A district court must accept well-pleaded facts as true. *Little v. CRSA*, 744 Fed. Appx. 679, 681 (11th Cir. 2018). Consistent with this standard, the Court describes the allegations in the complaint in the light most favorable to Mr. Bradley.

## II. FACTUAL ALLEGATIONS

In 2003, Mr. Bradley became the warden of the Morgan County jail. (Doc. 1, p. 3, ¶ 9). At the time, Ana Franklin was the Sheriff of Morgan County, and Robert Wilson, Blake Robinson, and Justin Powell were employees of the Morgan County Sheriff's Office. (Doc. 1, pp. 3-4, ¶¶ 12-14).[2] Based on his observations as warden, Mr. Bradley believed that Sheriff Franklin used inmate "trustee" labor improperly, engaged in nepotism and racial discrimination in hiring practices, mistreated inmates, violated ethical obligations, and misappropriated jail food money. (Doc. 1, pp. 4-5, ¶ 19).

Mr. Bradley alleges that he "had personal knowledge that [Sheriff] Franklin invested Morgan County jail food funds, and other MCSO funds, into private businesses for personal gain." (Doc. 1, p. 5, ¶ 23). Mr. Bradley asserts that each defendant benefitted from investments in and involvement with Priceville Partners, a used-car dealership, and the defendants worked together to conceal these investments from the public. (Doc. 1, pp. 6, 15, ¶¶ 32, 82, 90). Mr. Bradley asserts that the defendants received bribes, kickbacks, and other personal benefits from Priceville Partners. (Doc. 1, p. 20, ¶ 91(f)).

---

[2] Robert Wilson and Blake Robinson were deputies with the Morgan County Sheriff's Office. (Doc. 1, pp. 4-5, ¶¶ 12-13).

Mr. Bradley began communicating with Glenda Lockhart about his concerns about the defendants. (Doc. 1, p. 5, ¶ 25). Ms. Lockhart regularly wrote about Sheriff Franklin and the Sheriff's Office's involvement in purported public corruption on her online blog, the "Morgan County Whistleblower." (Doc. 1, p. 6, ¶¶ 26, 32).[3] Ms. Lockhart began to publicize and investigate Mr. Bradley's allegations. (Doc. 1, p. 8, ¶ 36).

After the Whistleblower Blog began exposing Sheriff Franklin and the defendants' alleged corruption, Sheriff Franklin told Mr. Wilson, Mr. Robinson, and Mr. Powell that she wanted to "shut down the Whistleblower Blog and punish everyone involved," including Mr. Bradley. (Doc. 1, p. 8, ¶ 38). The defendants worked together to identify and terminate every Morgan County Sheriff's Office employee who cooperated with Ms. Lockhart. (Doc. 1, p. 21, ¶ 95).

Based on a conversation he had with Daniel Lockhart, Ms. Lockhart's grandson, Mr. Robinson suspected that Mr. Bradley provided information to the Whistleblower Blog. (Doc. 1, p. 8, ¶ 41). Mr. Robinson told Sheriff Franklin, Mr. Wilson, and Mr. Powell of his suspicion. (Doc. 1, p. 9, ¶ 42). The defendants then coerced Daniel Lockhart into cooperating in their search for the Whistleblower

---

[3] Ms. Lockhart has filed a lawsuit against Sheriff Franklin, Mr. Wilson, Mr. Robinson, and Mr. Powell. The Court takes judicial notice of the records of this Court. *Lockhart et al. v. Franklin et al.*, No. 5:16-cv-1699-MHH; FED. R. EVID. 201 (explaining judicial notice). The Court has consolidated *Bradley v. Franklin* with *Lockhart* for purposes of discovery. (Doc. 26); (Lockhart Doc. 169).

Blog informants with cash payments and threats of criminal prosecution. (Doc. 1, p. 9, ¶¶ 43-46).

The defendants instructed Daniel Lockhart to obtain information related to the blog. (Doc. 1, p. 10, ¶ 48). Daniel Lockhart installed a universal serial bus drive containing "Ardmax Keylogger 4.6" software onto Ms. Lockhart's computer. (Doc. 1, p. 10, ¶ 49). The defendants told Daniel Lockhart that the purpose of accessing Ms. Lockhart's computer system was to terminate any Morgan County employee cooperating with Ms. Lockhart. (Doc. 1, p. 22, ¶ 95(f)). Using information obtained through the Keylogger software and Daniel Lockhart, the defendants requested search warrants targeting Mr. Bradley and Ms. Lockhart. (Doc. 1, p. 10, ¶ 52).

Relying on false information that the defendants provided to him, Circuit Judge Glenn Thompson signed a search warrant for Mr. Bradley's residence. (Doc. 1, p. 10, ¶¶ 53, 57). The Morgan County Sheriff's Office Drug Task Force executed the search warrant and raided Mr. Bradley's residence. (Doc. 1, p. 11, ¶ 54). The search exceeded the scope of the search warrant. (Doc. 1, p. 11, ¶ 57). Following the search, Sheriff Franklin and "others" interrogated Mr. Bradley for several hours. (Doc. 1, p. 11, ¶ 60). The defendants used the information and data to initiate judicial proceedings against Mr. Bradley. (Doc. 1, p. 23, ¶ 95(j)). Eleven months after the search of Mr. Bradley's residence, he was charged with

misdemeanor tampering with governmental records. (Doc. 1, p. 12, ¶ 62).[4] In October 2016, Sheriff Franklin terminated Mr. Bradley. (Doc. 1, p. 12, ¶ 67).[5]

### III. ANALYSIS

Mr. Bradley asserts the following claims against the defendants: (1) § 1983 violation of First Amendment rights, (2) § 1983 violation of Fourth Amendment rights due to unreasonable search and entry, (3) § 1983 violation of Fourth Amendment rights due to unreasonable seizure and false arrest, (4) § 1983 violation of Fourth and Fourteenth Amendment rights due to malicious prosecution, (5) § 1983 violation of Fifth and Fourteenth Amendment rights, (6) § 1983 conspiracy to deprive constitutional rights, (7) acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity under 18 U.S.C. §§ 1961(g), 1962(b), (8) conduct and participation in a RICO enterprise through a pattern of racketeering activity under 18 U.S.C. §§ 1961(5), 1962(c), (9) conspiracy to engage in a pattern of racketeering activity

---

[4] The Court takes judicial notice that Judge Thompson dismissed the charge against Mr. Bradley on April 27, 2018. In his order dismissing the charge, Judge Thompson found on an evidentiary record that defendants Franklin and Robinson "deliberately misled this Court for purposes of obtaining search warrants for Leon Bradley's residence and Glenda Lockhart's business known as Straight Line Drywall" and that the defendants in this case "endeavored to hide or cover up their deception and criminal actions." *State of Alabama v. Bradley*, DC17-1988, District Court of Morgan County, Alabama, Document 42, appearing in 16-1699-MHH at Doc. 79, pp. 60-63. The Court also takes judicial notice that the defendants in this action have asked for permission to intervene in the state court misdemeanor action to challenge Judge Thompson's findings in his order dismissing the charge against Mr. Bradley.

[5] The Court has provided an overview of Mr. Bradley's factual allegations. There is much more detail in Mr. Bradley's 56-page complaint.

under 18 U.S.C. § 1961(5), 1962(d), (10) violation of Electronic Communications Privacy Act, (11) state law invasion of privacy, (12) state law malicious prosecution, (13) state law conspiracy, and (14) conspiracy to violate Mr. Bradley's civil rights under 42 U.S.C. § 1985. The defendants argue that the Court should dismiss all of these claims, in part because the defendants contend that they are immune from Mr. Bradley's claims. This opinion focuses primarily on the defendants' immunity arguments.

### A. Absolute Immunity

Under Article I, § 14 of the Alabama Constitution, an Alabama sheriff is immune from state law claims for damages when the conduct that forms the basis of the state law claims was "performed within the course and scope of the officer's employment." *Ex parte Davis,* 930 So. 2d 497, 500-01 (Ala. 2005). A sheriff is not immune from state law claims based on conduct that is outside of the "course and scope" of the sheriff's employment, such as conduct "undertaken for some personal motive to further some personal interest and not as a part of [her] duties." *Davis*, 930 So. 2d at 501. Under Alabama law, the same rules apply to deputy sheriffs. *Tinney v. Shores*, 77 F. 3d 378, 388 (11th Cir. 1996).

Accepting the allegations of Mr. Bradley's complaint as true, his state law claims against the defendants are based on conduct "undertaken for some personal motive to further some personal interest" and not as part of the defendants official

7

duties. *Davis*, 930 So. 2d at 501. Mr. Bradley has sued the defendants in their individual capacities. (Doc. 1, pp. 3-4, ¶¶ 11-14). Mr. Bradley alleges that he provided information to a blog about the defendants' involvement in purported public corruption. Mr. Bradley contends that Sheriff Franklin "wanted to shut down the Whistleblower Blog and punish everyone involved, including [Mr. Bradley]" so that she and the other defendants could protect their jobs and their ill-gotten gains. (Doc. 1, p. 8, ¶ 38). Mr. Bradley alleges that the defendants embarked upon a campaign to develop information that would give Sheriff Franklin the means to arrest Mr. Bradley and silence the Whistleblower blog. That campaign allegedly involved intimidation, bribery, and other misconduct. Mr. Bradley alleges that the defendants arrested him without a lawful warrant and without probable cause. (Doc. 1, p. 37, ¶¶ 160-61).

The defendants have cited no authority for the proposition that a sheriff or her deputies act within the line and scope of employment when engaging in bribery, intimidation, and other misconduct to silence a public critic. The Court is aware of no such authority. *See generally Cooper v. Smith*, No. 1:12-CV-889-WKW, 2013 WL 252382 (M.D. Ala. Jan. 23, 2013). Accepting Mr. Bradley's allegations as true, the defendants cannot establish at this phase of the litigation that they are entitled to absolute immunity from Mr. Bradley's state law claims for

duties. *Davis*, 930 So. 2d at 501. Mr. Bradley has sued the defendants in their individual capacities. (Doc. 1, pp. 3-4, ¶¶ 11-14). Mr. Bradley alleges that he provided information to a blog about the defendants' involvement in purported public corruption. Mr. Bradley contends that Sheriff Franklin "wanted to shut down the Whistleblower Blog and punish everyone involved, including [Mr. Bradley]" so that she and the other defendants could protect their jobs and their ill-gotten gains. (Doc. 1, p. 8, ¶ 38). Mr. Bradley alleges that the defendants embarked upon a campaign to develop information that would give Sheriff Franklin the means to arrest Mr. Bradley and silence the Whistleblower blog. That campaign allegedly involved intimidation, bribery, and other misconduct. Mr. Bradley alleges that the defendants arrested him without a lawful warrant and without probable cause. (Doc. 1, p. 37, ¶¶ 160-61).

The defendants have cited no authority for the proposition that a sheriff or her deputies act within the line and scope of employment when engaging in bribery, intimidation, and other misconduct to silence a public critic. The Court is aware of no such authority. *See generally Cooper v. Smith*, No. 1:12-CV-889-WKW, 2013 WL 252382 (M.D. Ala. Jan. 23, 2013). Accepting Mr. Bradley's allegations as true, the defendants cannot establish at this phase of the litigation that they are entitled to absolute immunity from Mr. Bradley's state law claims for

damages. Therefore, the Court denies the defendants' motions to dismiss Mr. Bradley's state law claims on the basis of absolute immunity.

### B. Qualified Immunity

As to Mr. Bradley's claims that the defendants violated his Fourth, Fifth, and Fourteenth amendment rights, the defendants argue that they are entitled to qualified immunity. (Doc. 8, pp. 17-19; Doc. 9, pp. 5-7). "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The affirmative defense "protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citing *Harlow*, 457 U.S. at 817-19). Qualified immunity is premised on the presumption that "a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 819.

Because "qualified immunity is a privilege that provides an immunity from suit rather than a mere defense to liability," a district court must "resolve immunity questions at the earliest possible stage in litigation." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (internal citations, quotations, and emphasis omitted); *see also Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008) ("'The Supreme

Court has urged us to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only.'") (citation omitted).

To establish the defense, a defendant must demonstrate that she "was acting within the scope of [her] discretionary authority." *Case*, 555 F.3d at 1325. Once that showing is made, "[t]he burden then shifts to the plaintiff to overcome the defense of qualified immunity." *Case*, 555 F.3d at 1325; *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("[T]he burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity") (emphasis in original). To carry this burden, the plaintiff must demonstrate that the defendant "'violated clearly established law based upon objective standards.'" *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1295 (11th Cir. 1998) (quoting *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)). Thus, "[q]ualified immunity affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'" *Crawford*, 529 F.3d at 978 (citation omitted).

The defendants cannot demonstrate that their alleged acts fell within the scope of their discretionary authority, and Mr. Bradley alleges that the defendants knowingly violated the law. According to Mr. Bradley, the defendants engaged in extortion to gather information about him and then presented false information to Judge Thompson in support of a search warrant request. The defendants assert, in

response, that they "were clearly acting within their discretionary authority when they investigated the removal and release of documents from the Morgan County Sheriff's Office." (Doc. 8, p. 19). Additionally, they contend that "searching [Mr. Bradley's] residence pursuant to a warrant and detaining and arresting" Mr. Bradley were discretionary duties. (Doc. 8, p. 19). The conduct that Mr. Bradley alleges, if true, does not constitute acts within the defendants' discretionary duties. The defendants' effort to portray these actions as discretionary is unpersuasive because the Court must accept Mr. Bradley's allegations as true. Therefore, the Court denies the defendants' motions to dismiss on the basis of qualified immunity.

### C. State-Agent Immunity

Mr. Wilson, Mr. Robinson, and Mr. Powell argue that they are entitled to state-agent immunity with respect to Mr. Bradley's state law claims. (Doc. 8, p. 25). As with qualified immunity, state-agent immunity "is a question of law to be decided by the trial court." *Suttles v. Roy*, 75 So. 3d 90, 99 (Ala. 2010) (quoting *Ex parte Sawyer*, 984 So. 2d 1100, 1106-07 (Ala. 2007)) (internal quotation marks and citation omitted). This immunity applies "when the conduct made the basis of the claim against the [officer] is based upon the [officer's] … exercising judgment in the enforcement of the criminal laws of [Alabama], including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons…." *Hollis v.*

*City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). An officer is not entitled to discretionary function immunity when the officer "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Howard v. City of Atmore*, 887 So. 2d 201, 205 (Ala. 2003) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

Analysis of discretionary function immunity under Alabama law is analogous to that of federal qualified immunity. An officer asserting discretionary function immunity "bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle [the officer] to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008). If the officer does that, then the burden shifts to the plaintiff to show that the officer is not entitled to state-agent immunity. *Ex parte Kennedy*, 992 So. 2d at 1282. As the Court explained above, Mr. Bradley's allegations indicate that the defendants acted willfully, maliciously, and in bad faith. There is no case law indicating that when officers engage in illegal activity and attempt to conceal that activity they act within the scope of their employment. Accordingly, the Court denies the defendants' motion to dismiss Mr. Bradley's state law claims on the basis of state-agent immunity.

### D. Intracorporate Conspiracy Doctrine

In addition to their immunity arguments, the defendants contend that the intracorporate conspiracy doctrine bars Mr. Bradley's conspiracy claims under 42

U.S.C. §§ 1983, 1985(3). (Doc. 8, pp. 29-30; Doc. 9, pp. 6, 10). "[T]he intracorporate-conspiracy doctrine holds that a corporation may not be held liable for any alleged conspiracy with its own employees or agents…." *M & F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013) (citing *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). Under the doctrine, employees of a corporation, "when acting in the scope of their employment, cannot conspire among themselves." *Grider*, 618 F.3d at 1261. The doctrine developed out of basic agency principles that attribute the actions of a corporation's agents to the corporation itself, negating "the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew*, 206 F.3d at 1036.

The intracorporate conspiracy doctrine applies only to civil causes of action. *McAndrew*, 206 F.3d at 1035. But the doctrine does not apply in a civil case in which a plaintiff alleges a civil claim based on conduct that purportedly is criminal. *McAndrew*, 206 F.3d at 1038. The criminal exception applies to cases arising under 42 U.S.C. § 1985(2)). Mr. Bradley seeks redress for criminal acts. Mr. Bradley alleges that the defendants conspired to commit a variety of crimes. These crimes include: defrauding Morgan County taxpayers, "skimming financial resources from MCSO to private businesses and investment interests," violating inmate trustee policies and procedures, and depositing sums of money from public

13

fundraising and pistol permits into their personal accounts. Mr. Bradley also alleges that the defendants engaged in extortion and fraud to obtain state search warrants. (Doc. 1, ¶¶ 34, 43-46, 82, 98). This alleged criminal conduct, if proven, precludes application of the intracorporate conspiracy doctrine in this case.

### E. Failure to State Cognizable Claims

The defendants contend that Mr. Bradley has not stated cognizable claims in counts one, five, seven, eight, and nine. The Court has reviewed Mr. Bradley's complaint and is satisfied that his allegations provide enough detail to put the defendants on notice of the claims against them. Because a ruling on the merits of Mr. Bradley's claims is premature and because early dismissal of counts one, five, seven, eight, and nine will not appreciably impact the scope of discovery, the Court denies the defendants' motions to dismiss Mr. Bradley's claims for failure to state a claim. The defendants may renew their merits arguments and their immunity arguments in their dispositive motions.

### 5. Stay Due to Ongoing Criminal Investigation

The defendants also contend that the Court should stay Mr. Bradley's action due to ongoing criminal investigations. (Doc. 8, pp. 33-34). The parties already are engaged in discovery. The Court denies the defendants' request.

## IV. CONCLUSION

For the reasons explained above, the Court denies the defendants' motions to dismiss Mr. Bradley's complaint. (Docs. 8, 9). If the parties wish, they may present these arguments again on a more developed evidentiary record.

**DONE** and **ORDERED** this 11th day of March, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE